## Latta v. Brooks et al.

Feb. 23, 1943.

W. Clarke Otte, James S. Shaw and James H. Frazee for appellant.

Woodward, Dawson & Hobson and James Boswell Young for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

This case involves the attractive nuisance doctrine. The appeal challenges the correctness of the action of the trial judge in granting a peremptory instruction in favor of the appellees at the conclusion of the plaintiff's evidence.

During the early part of 1939 the appellee, W. W. Brooks, employed the Horace McClellan Contracting Builders to build a house for him in Louisville. Horace McClellan, another appellee, and president of the corporation, supervised the construction work. Jimmy Latta, who was then about five and one-half years of age, and several other children who lived in the vicinity of the construction job, frequently went there to play around the place and in the sand. Mr. McClellan said that he saw several children around the job from time to time, and though frequently he would tell them to leave they would come back and start playing again. A garage had been built on the back of the lot where the house was being constructed. It opened on an alley, and, while it had an overhead door, it seems that this door was left open during the day. There was a door on the side of the garage facing the house which was closed most of the time. Mr. McClellan said that he had used some ordinary building lime when the foundation was being poured, and when he had finished that job the remainder of it was placed in an iron wheelbarrow in the garage. Jimmy Latta said that he had played about the Brooks premises on several occasions, and on one previous occasion he had seen the lime in the wheelbarrow in the garage. He said that on the day he was injured he and some other children went down to play in the sand and that they decided to get some of the lime to make highways in the sand. He said also that, while they were in the garage, another boy about six and one-half years of age, who was up on the sacks, told him to throw him some lime, which he did, and that another boy threw some lime at him and it went in his eyes. Jimmy's eyes were severely burned, and there is no question as to his permanent injury. A workman said that an employee of a subcontractor put some water in Jimmy's eyes to wash out the lime before he was taken home.

The charge of negligence on the part of the appellees was that the lime, said to be a dangerous substance, was left in an uncovered and unprotected place, and that they knew, or should have known, by the exercise of ordinary care, that it and the other articles of building material were unusually attractive to children, and that they were negligent in permitting the materials to remain in an unguarded and unprotected place on the premises.

The trial judge's theory of the case can be gathered

from the following quotation from his statement to the jury:

"* * * Now, to hold McClellan and Brooks behind him as at fault in the matter in applying this doctrine of attractive nuisance, we would have to say, as a matter of law, that McClellan was at fault not only in having the lime there, exposed as it was, but in not anticipating that children would get in there and throw the lime out. I think that is the critical point of the case, the pivotal point. The lime in and of itself was not dangerous in its inactive state, but it was made dangerous by the fact that the boys themselves handled it and threw it at each other, and it is not my conception of the law in this particular branch that McClellan was negligent, or at fault in not anticipating that boys might handle that lime and throw it at each other. Unquestionably, the proximate cause and injury to James' eye was the fact that lime was thrown on him by another boy, and he had himself thrown lime at that boy. I don't think that we could go to the extent— I don't think that this principle of attractive nuisance goes to the point of requiring the handler of such things as lime to anticipate that boys would indulge in that way in throwing the lime at each other. * * *"

The attractive nuisance doctrine is based upon the proposition that one who maintains upon his premises a condition, instrumentality, machine or other agency, which is dangerous to children of tender years by reason of their inability to appreciate the peril therein, and which may reasonably be expected to attract children of tender years to the premises, is under a duty to exercise reasonable care to protect them against the dangers of the attraction. See Louisville & N. R. Co. v. Vaughn, 292 Ky. 120, 166 S. W. (2d) 43. The question is, Does ordinary unslacked building lime fall within that category? We think not. Lime is a common article of building material and is used generally in construction work. It is widely used also for white-washing the exterior and interior of buildings and fences, and for sanitary purposes. It is practically harmless in its unslacked form, though it is apt to burn or irritate the human body if it comes in contact with it after the substance has been slacked or moistened. We think that we would be going

far afield should we place ordinary, unslacked lime in the same category with turntables, engines, gunpowder, dynamite caps and gasoline tanks. In reaching this conclusion we are not unmindful of the holding of this Court in Gnau v. Ackerman, 166 Ky. 258, 179 S. W. 217. In that case an ordinary sand pile, where children had been playing, was converted into a dangerous agency by the placing of a quantity of slacking lime in the center of the sand pile, thus making a mortar bed. The very place where children had been wont to play was made dangerous through the placing of slacking lime in it. In the case at bar the children left that which had attracted them to the building premises, the sand pile, and went into the garage to get lime to bring back to the sand pile. Jimmy sustained his injury while the boys were throwing lime on each other in the garage—to say nothing of the fact that an employee of a subcontractor attempted to wash the lime from his eyes with water. But, since we have reached the conclusion that the lime in question is not to be classed as a dangerous substance, but rather as a harmless building material, we can not refrain from asking, Would the appellees have been liable if one of the children had thrown sand into Jimmy's eyes? Obviously, the answer is No. Nor would they have been liable had a child been injured while the children were throwing stones at each other while playing around a pile of crushed rock.

The case of Fitzpatrick v. Rose Donahue Realty Co., 151 Minn. 128, 186 N. W. 141, 36 A. L. R. 20, dealt with a situation where a child was injured while she and other children were playing with unslacked lime. After pointing out that the injured child was probably a licensee, since she and other children had been playing about the premises, the Minnesota Supreme Court said:

"* * * The essential facts are, however, that slacked lime is a common article of building material in general use among building contractors. It is frequently left exposed on lots and in public thoroughfares at places convenient to building operations. It is not naturally especially attractive to children and is not inherently any more dangerous than many other articles of common use that are ordinarily left within reach. It may be handled without harm. It is only dangerous when put into the eye or in contact with some tender member. It has

not even a natural tendency to splash or scatter. This barrel of lime was put in a place convenient to the work and was kept and protected in the usual manner, in fact more protected than is often the case. The conduct of defendant was only permissive. The test applied in such cases, as stated in a recent decision, Rothenberger v. Powers Fuel, Feed, Transfer & Storage Co. [148 Minn. 209], 181 N. W. 641, is that 'if a man does an act, and he knows, or by the exercise of reasonable foresight, should have known, that in the event of a subsequent occurrence, which is not unlikely to happen, injury may result from his act, and such subsequent occurrence does happen and injury does result, the act committed is negligent, and will be deemed to be the proximate cause of the injury.'

"There was so little cause in common experience to apprehend a casualty of the kind that happened in this case that in our opinion defendant was not under duty to cause the removal of the material. * * *"

The Fitzpatrick case has been cited because of the refusal of the Minnesota court to class even slacked lime as a substance "especially attractive to children," and "not inherently any more dangerous than many other articles of common use that are ordinarily left within reach."

As pointed out by the trial judge, the throwing of the lime into Jimmy's eyes by another child was the proximate cause of his injury. Even should it be conceded that McClellan was negligent in permitting the lime to remain in a wheelbarrow some six or eight feet from the front of the garage, we fail to see how such negligence could be considered as the proximate cause of Jimmy's injury. The children might have gone into the garage and played with the lime for hours without injury; just as they might have taken it and made highways all over the sand pile and building premises without injury. There was no causal connection between the leaving of the lime in the wheelbarrow and its being thrown into Jimmy's eyes by another child. True it is that a railway company might be liable when one child moves an unlocked turntable and injures another, but there the primary attraction of the turntable is its movability. The same would be true of the placing of carbide

in a can and pouring water on it to cause an explosion, the attraction of the carbide being the explosion. See Juntti v. Oliver Iron Mining Co., 119 Minn. 518, 138 N. W. 673, 42 L. R. A., N. S., 840. In this connection it is interesting to note that it was held in the case of Beetz v. Brooklyn, 10 App. Div. 382, 41 N. Y. S. 1009, that the act of the city in permitting barrels of quick lime to be placed with other building materials on a street was not the proximate cause of an injury where boys took some of the lime which had escaped from the barrel, carried it into a vacant lot and put some of it in a can of water, whereupon some of the lime was blown into the plaintiff's face on the ground that such was not a natural or probable consequence of the city's act.

The attractive nuisance doctrine is a humane one, and has been applied by this Court with some degree of liberality, but we believe it would be carrying it too far to sustain the contentions of appellant herein.

Judgment affirmed.